EDWARD ROSS, Plaintiff-Appellee and Cross-Appellant, *v.* SHELDON H. STEINER, M.D., Defendant-Appellant and Cross-Appellee.—(AMERICAN NATIONAL BANK AND TRUST CO. *et al.,* Defendants.)
First District (4th Division)    No. 77-58

Opinion filed November 9, 1978.

Collins & Amos, of Chicago (Thomas H. Boerschinger, of counsel), for appellant.

Barry J. Freeman, of Freeman, Atkins & Coleman, Ltd., of Chicago, for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Edward Ross, filed this action against defendant, Sheldon H. Steiner, M.D., and others seeking to protect his rights in certain property following defendant's decision to treat plaintiff's option to repurchase the property as terminated. The option to repurchase was created by a written agreement providing for the sale of the property by plaintiff to defendant.

After a bench trial, the trial court granted plaintiff a 25-day extension

of time within which to exercise the option to repurchase. Defendant appeals, contending that (1) the decision of the trial court is against the manifest weight of the evidence; (2) plaintiff is not entitled to the relief granted because he failed to make a sufficient tender of the repurchase price to the defendant; and, (3) the trial court erred in refusing defendant's request for attorneys' fees and costs. Plaintiff cross-appeals from the trial court's additional holding that the agreement providing for the sale with option to repurchase was not an equitable mortgage.

We affirm the decision of the trial court.

## EVENTS LEADING TO THE AGREEMENT OF MARCH 17, 1975:

Prior to the events involved in this action both plaintiff and defendant had engaged the law firm of Rosenthal and Carnow for various unrelated legal services. Defendant, on the advice of this law firm, had invested with plaintiff in a dinner-playhouse venture in Kansas City. Defendant had also advanced plaintiff $25,000 to develop a dinner-theater at the Town Theater Building located at 322-24 West Armitage in Chicago. As of March 1975, defendant had received no return on these investments.

At that time, legal title to the Town Theater Building was held in trust by the Exchange National Bank of Chicago. Plaintiff was the beneficial owner of the property and his entire interest was assigned as collateral for money loaned to him by the Parkway Bank and Trust Company. A first mortgage on the property, the Pritzker mortgage, had been reduced to approximately $11,400 by March 1975, and attempts were being made to refinance the building in order to proceed with the development of the dinner-theater.

In February of 1975, the Parkway Bank and Trust Company notified plaintiff that they intended to sell the collateral because he was in default, and the bank initiated proceedings to sell plaintiff's interest in the property. Plaintiff filed an action to prevent the sale and the sale was temporarily restrained by the court.

In seeking potential sources of money to remedy plaintiff's financial dilemma, attorney Carnow informed defendant that plaintiff's interest in the Town Theater Building was in jeopardy. After engaging in negotiations with plaintiff, defendant agreed to purchase plaintiff's beneficial interest in the property and he acquired separate counsel to represent him in that transaction. Pursuant to a written agreement which was signed March 17, 1975, defendant deposited $55,000 into an escrow account. Approximately $38,000 of this amount was used to pay the balance of the Parkway loan and an additional sum went to satisfy an existing mechanic's lien on the subject property. In addition, $10,000 was paid directly to plaintiff. Defendant took the interest subject to the Pritzker mortgage and real estate taxes for the years 1972, 1973

and 1974. The agreement also gave plaintiff an option to repurchase the property within 181 days after the escrow transaction closed. The repurchase price assured defendant a $20,000 profit.

Defendant arranged to obtain a $55,000 loan from the Bank of Ravenswood to finance his obligation under the agreement. Before the bank would give a commitment for the financing, it demanded a letter from plaintiff's attorney stating that the transaction described in the agreement was a sale rather than a mortgage. Plaintiff's attorney sent this letter to the bank and, thereafter, legal title to the property was transferred from the Exchange National Bank to the Bank of Ravenswood as trustee.

EXERCISE OF THE OPTION:

On September 16, 1975, plaintiff notified defendant that he had initiated procedures to exercise his option to repurchase the subject property. Two escrows were established, an escrow between plaintiff and defendant for the reconveyance of the property to plaintiff for $73,000 and a money-lender's escrow between plaintiff and his lender, Paul Rosenbaum, in which $81,000 was deposited to be released to the plaintiff-defendant escrow upon receipt of good title. The money-lender's escrow was amended to permit plaintiff to place a second mortgage on the property if it became necessary to acquire additional funds. By agreement of the parties the term of the option period was extended until November 3, 1975.

During this period there were delays in defendant's deposit of certain documents in the plaintiff-defendant escrow. The Bank of Ravenswood deposited a payoff letter but did not deposit a release of the mortgage which it held on the property and which secured not only the subject property but other monies owing from defendant to the bank.

Also during this period, foreclosure proceedings were instituted on the Pritzker mortgage and a sale of the real estate for the 1972-74 taxes required immediate redemption, thus, increasing plaintiff's financial requirements to complete the repurchase. In addition, plaintiff had entered into negotiations for the sale of the property to James McHugh Construction Co. and had given McHugh an option to purchase the property for the price of $350,000. These events led to renewed discussions between plaintiff and defendant.

On Monday, October 27, 1975, the parties met at the urging of attorneys Rosenthal and Carnow and discussed the possibility of jointly developing the property. No agreement was reached at that time. During the following week, negotiations continued between the parties and their representatives regarding a possible joint venture. These negotiations involved numerous phone calls and meetings.

On Friday, October 31, a two-page memorandum proposing a joint venture was drafted for the parties' approval. Plaintiff, who was present

at the Friday negotiations, approved the proposed agreement which provided for a division of the interests in the property on the basis of 75 percent to plaintiff and 25 percent to defendant in the event that McHugh purchased the property and on the basis of a 50-50 percent split if the McHugh option was not exercised. That day, defendant was notified of the agreement by telephone and he asked to see the written agreement before approving it.

The events which transpired after the Friday meeting are a matter of contention. Rosenthal testified that he received a phone call on Saturday from his partner Carnow who stated that defendant had accepted the agreement. Plaintiff testified that he was present when Carnow called and it was his understanding that the memorandum prepared on the previous Friday had been accepted by defendant. Plaintiff, before leaving town for the weekend, sent a letter to defendant confirming the arrangement.

Defendant denied that he had accepted the agreement or told Carnow that he approved the memorandum agreement. Defendant's attorney also denied that an agreement had been reached between defendant and plaintiff.

On Monday, November 3, defendant indicated his refusal to accept the agreement reached the previous Friday. Since November 3 was the final day of the 181-day option period and plaintiff did not have the necessary financing to complete the repurchase, defendant instructed his attorney to withdraw the documents then in escrow and to treat the option as terminated.

On November 7, 1975, plaintiff initiated this action in an attempt to protect his interest in the property. The complaint alleged in the alternative that the original sale with option to repurchase was an equitable mortgage entitling plaintiff to the right of redemption; that the parties had negotiated an agreement on October 31, 1975, which negated the option agreement; and, that the original agreement was illegal and unenforceable. Plaintiff initially sought a preliminary injunction but later withdrew this motion and proceeded to a trial on the merits. During the preliminary injunction hearing, plaintiff indicated that he was ready, willing and able to complete the repurchase transaction.

The trial court found in its memorandum opinion of August 19, 1976, that the March 17, 1975, transaction was a sale and not an equitable mortgage of the subject property. The court went on to find that there was misunderstanding and confusion surrounding the closing of the option transaction on the November 3, 1975, date caused by the parties' continuing negotiations. The court determined that plaintiff was informed on behalf of defendant that an oral agreement had been reached, with the reasonable expectation that the defendant would sign such an agreement making the November 3 expiration date no longer effective. The trial

court granted plaintiff an extension of 25 days from the date of the trial court's final order within which plaintiff could exercise the option given him by the agreement of March 17, 1975. Plaintiff complied with the terms of the trial court's order and the beneficial interest in the land trust was transferred to plaintiff by the Bank of Ravenswood.

Defendant appeals from that portion of the trial court's order extending the option period and plaintiff has taken a cross-appeal from the trial court's holding that the March 17, 1975, agreement was not an equitable mortgage.

OPINION:

### I.

Despite the confusing nature of the negotiations which gave rise to this appeal, the rule of law which controls its disposition is simple. A reviewing court will not disturb a trial court's findings and substitute its own unless the holding of the trial court is manifestly against the weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Willis v. Rich* (1964), 30 Ill. 2d 323, 196 N.E.2d 676.) It is well settled that the trial judge is in the best position to determine the credibility of witnesses and to weigh the evidence. (*Vassel v. Underwood* (1967), 85 Ill. App. 2d 222, 229 N.E.2d 354.) As we cannot say that either the trial court's evaluation of the facts or ultimate holding was against the manifest weight of the evidence, we affirm the judgment.

### A.

Defendant contends that the trial court's decision is based on evidence which was not properly before the court. Citing *George v. Moorhead* (1948), 399 Ill. 497, 78 N.E.2d 216, defendant claims that in reaching its decision, the trial court improperly considered certain evidence presented at a hearing on plaintiff's motion for a preliminary injunction, a motion which plaintiff withdrew before proceeding with the trial on the merits. There is no indication from the record that the court considered that hearing testimony. In fact, the court specifically stated that it could not do so. Although the testimony presented at trial in many respects repeated testimony previously heard at the preliminary injunction hearing, reference to this earlier testimony is unnecessary to support the trial court's decision.

### B.

An equally futile claim is defendant's contention that the relief granted by the trial court was not based on any theory raised in the pleadings. Plaintiff's complaint stated several theories: (1) that the March 17, 1975, agreement for a sale with option to repurchase was an equitable

mortgage entitling plaintiff to the right of redemption; (2) that the parties had reached an agreement which negated the terms of the option; and (3) that the entire agreement was illegal and unenforceable. The trial court's memorandum opinion made specific findings regarding the first and second theories, rejecting the theory of equitable mortgage but finding that an oral agreement had been reached by the parties before the option period had expired. Although the trial judge did not conclude that the oral agreement was enforceable, he did determine that in light of plaintiff's reliance upon it, equity dictated that plaintiff be given a reasonable time to exercise the option to repurchase granted in the March 17, 1975, agreement. Thus, the relief granted was based on plaintiff's theory that the parties had reached an oral agreement making the November 3, 1975, expiration date no longer effective. Furthermore, the relief granted was encompassed within plaintiff's prayer for "such other and further relief" as the court deemed equitable.

## C.

Stripped of these preliminary contentions the question which remains for our consideration is whether the trial court's decision is supported by substantial competent evidence. We believe that it is.

The record indicates that plaintiff and defendant entered into the initial agreement for a sale with an option to repurchase.[1] On September 17, 1975, plaintiff notified defendant that he was exercising his option to repurchase the subject property. Two escrows were established to accomplish this purpose.

The option period was extended to November 3, 1975, by agreement of the parties after several delays were experienced in completing the escrow transactions. The parties appear particularly concerned with the cause of these delays. Defendant claims that plaintiff stalled because he lacked sufficient funds to complete the repurchase. Plaintiff argues that defendant was responsible for the delay because he failed to deposit a release of the mortgage held by the Bank of Ravenswood and, absent a release, plaintiff could not complete his financing arrangements. As recognized by the trial court there appears to be some merit in both of these contentions; however, the responsibility for any delay became insignificant when the parties agreed to extend the option period to the November 3, 1975, date.

■■ It is undisputed that the parties engaged in negotiations from October 27 until November 3, 1975. These negotiations were prompted in part by the apparent interest of a third party in acquiring the subject property (the McHugh option). It is also undisputed that on Friday, October 31,

---

[1] Although plaintiff by cross-appeal challenges the trial court's determination that this transaction was not an equitable mortgage, our disposition of this case makes it unnecessary to review that portion of the judgment.

1975, a tentative agreement was prepared for the parties' approval. At this point the testimony of the parties is in conflict. Plaintiff and Rosenthal testified that they were informed by Carnow that an agreement had been reached with defendant. Defendant and his attorney deny that an agreement was reached. The credibility of the witnesses and the weight to be accorded their testimony is a matter solely within the province of the trial court as trier of fact. In light of all the evidence, we cannot disagree with the trial court's findings that plaintiff was informed on behalf of the defendant that an oral agreement had been reached and that this information caused plaintiff to allow the option period to expire without seeking additional financing.

## II.

Defendant next objects to the form of the relief granted. He contends that plaintiff was not entitled to an equitable extension of the option period because he failed to do equity by making a sufficient tender of the option price.

■■ It is an elementary maxim of equity that one seeking equity must do equity. (See *Durfee v. Murray* (1880), 7 Ill. App. 213.) When a contract is involved, this generally means that the party seeking the enforcement of the contract must show that he is ready, willing and able to perform his obligations under the contract. (*Kopeyka v. Woodstrom* (1922), 305 Ill. 69, 137 N.E. 137.) Whether or not a tender of performance is sufficient depends on the particular facts of the case. See *H.M.R., Inc. v. Boeckenhauer* (1962), 24 Ill. 2d 65, 179 N.E.2d 613.

■■ Here the record reveals a sufficient willingness and ability to perform on the part of plaintiff to entitle him to the equitable relief granted. On November 3, 1975, defendant elected to treat the option as terminated without further notice. He directed his attorney to withdraw the documents previously deposited in the plaintiff-defendant escrow. Plaintiff immediately filed this lawsuit. On November 25, 1975, in open court, plaintiff's attorney indicated that the plaintiff was willing to tender the option price. Later in the court proceedings plaintiff again indicated his willingness to perform but this offer was rejected by defendant. Throughout the proceedings $81,000 remained on deposit in escrow. However, the termination of the option left plaintiff unable to complete the financing to repurchase the property, since his ability to obtain financing was dependent upon the property itself as security. Defendant's own actions in treating the option as terminated made it impossible for plaintiff to obtain the requisite financing. In view of these facts, the trial court properly ordered an equitable extension of the option period to prevent the unjust forfeiture of plaintiff's interest in the property.

It must be noted that the court did not order specific performance of the option contract but merely extended the period within which the

option could be exercised for an additional 25 days. Defendant was not required to perform until the plaintiff had deposited in escrow those funds necessary to effectuate a transfer of the subject property. The execution of mortgage documents ordered by the court did not prejudice defendant. Moreover, defendant obtained the benefit of the bargain into which he had originally entered.

### III.

■■ Finally, defendant asks us to review the trial court's denial of his request for attorneys' fees. To repeat a well settled rule "in the absence of statute * * * attorneys' fees and the ordinary expenses and burdens of litigation are not allowable to the successful party." (*House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 51-52, 245 N.E.2d 468, 472, *appeal dismissed and cert. denied* (1969), 396 U.S. 8, 24 L. Ed. 2d 8, 90 S. Ct. 26.) It seems unnecessary to add that this rule applies to an unsuccessful party's request for fees as well.

■■ Because he was compelled to defend this lawsuit, defendant contends it is only equitable that he be reimbursed for his efforts. We do not agree. Defendant's position is no different than that of any other defendant and his entitlement to attorneys' fees is no greater. Defendant was fairly treated by the trial judge who ordered plaintiff to pay him all expenditures made with regard to the subject property, the $20,000 profit included in the repurchase price, plus interest on all sums. We cannot, as suggested by defendant, equate his position as an unsuccessful defendant in this case with that of a prevailing party in a slander of title action. See *Home Investments Fund v. Robertson* (1973), 10 Ill. App. 3d 840, 295 N.E.2d 85.

For the foregoing reasons we affirm the decision of the circuit court of Cook County. It is, therefore, unnecessary to reach the equitable mortgage question raised as an alternative theory of recovery by plaintiff's cross-appeal.

Judgment affirmed.

JOHNSON, P. J., and ROMITI, J., concur.