*In re* MARRIAGE OF NORMA PAHLKE, Petitioner-Appellee, and FRAZER PAHLKE, Respondent (Ute Schmidt, a/k/a Ute Domnick, Third-Party Defendant-Appellant).

First District (1st Division)   No. 82—2598

Opinion filed December 30, 1983.

Andrew A. Ziemba and Terrence E. Leonard, both of Chicago, for appellant.

Grant & Grant, and Jerry S. Goldberg and Evan James Mammas, both of Mammas & Goldberg, Ltd., both of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Third-party defendant Ute Schmidt, also known as Ute Domnick, appeals from an order of the circuit court of Cook County, domestic relations division, which imposed a constructive trust over, and removed her from possession of a house that she purchased from Frazer Pahlke, the husband in a pending divorce proceeding. The court gave possession of the house to Frazer's wife, Norma. The appeal relates solely to issues involving the third-party defendant Ute as the divorce proceeding is still pending in the trial court.

Ute raises the following issues on appeal: (1) Whether the trial court in a civil matter is required to apprise a *pro se* defendant of the consequences of the pending proceedings; (2) whether prior to the issuance of a divorce, the circuit court, domestic relations division, has jurisdiction to enter an order imposing a constructive trust over property owned by a third-party defendant; (3) whether the sale of the marital home by the husband may be set aside as a sham transaction when the purchaser gave consideration and received title; (4) whether a court may adjudicate property claim and rights between parties in a hearing initiated by a petition for a rule to show cause.

Frazer and Norma Pahlke were married in 1964. They have four children ranging in age from 14 to seven. In 1976, a home was purchased for $92,400 in Glenview, Illinois, and the family resided there until June 19, 1982. Title to the property was held in a land trust for the beneficial interest of Frazer. Both Frazer and Norma were liable under the mortgage on the house.

On December 1, 1980, Norma commenced this action by the filing of a praecipe for summons. (Ill. Rev. Stat. 1979, ch. 40, par. 411.) On December 11, 1980, the court entered an agreed injunction preventing Frazer from "beating, striking, abusing, molesting, threatening, or in any manner interfering with the Petitioner and minor children ***." Without informing his wife, on May 7, 1982, Frazer signed a contract to sell the house in Glenview to Ute and closed the sale on May 17, 1982. On June 19, 1982, again without informing his wife or children, Frazer packed and moved the family belongings to a townhouse apartment in Wheeling, Illinois. Ute took immediate possession of the house. Thereafter, on June 28, 1982, Norma filed a petition for disso-

lution of marriage and, naming Ute as an additional party defendant, filed a petition for a rule to show cause why a constructive trust should not be declared over the Glenview house.

Norma's complaint alleged *inter alia* that she had resided at the marital home until June 19, 1982; that when she attempted to regain entry to the home on June 23, she learned that it was occupied by Ute who claimed to have purchased it from Frazer; that Norma had never signed any documents releasing her interest in the house; that Norma believed Frazer and Ute to be romantically involved; and, that the transfer of the marital home was fraudulent and in violation of the preliminary injunction. Norma prayed that the court declare a constructive trust over the home and award her sole ownership of the property and the right to reside there with the children during the pendency of the action.

At the hearing on Norma's petition, Norma testified that she had believed that she was a joint owner of the house and that since she and her husband had purchased the house they have spent approximately $8,000 in improvements and repairs. She testified that on June 19, 1982, her husband told the family that they were all going to Great America Amusement Park. He dropped off Norma and the children at the Park and told them he had to go to work. At 9:30 p.m. he picked them up and after dropping off several friends of the children he drove them past some of the sites where he had been working. Then at about 11:30 p.m. he stopped in front of an apartment building in Wheeling and told them they were going to visit friends who had just moved there. When they walked into the apartment they saw that it was filled with boxes and some of their furniture. Frazer then announced, "Well, this is where you're going to live." Norma testified that she did not know of any emergencies or any reasons that would compel her husband to sell the house and that they had no debts. She testified that the monthly payments on their mortgage were about $452 and that the rent on the apartment was $450 per month. She also testified that the house had four bedrooms whereas the apartment had only three bedrooms.

Norma testified that she did not know about the sale of the home until after her husband had moved them to Wheeling. She testified that she had never met Ute until the beginning of the court proceeding but that her husband had known Ute for about 2½ years.

Frazer Pahlke testified that he is an environmental engineer. He adjusts and repairs heating and cooling plants in commercial buildings. Frazer testified that he learned from a friend that Ute Schmidt was interested in purchasing his house. He had met Ute when he was

repairing the power plant at Northwestern University. Frazer testified that neither a real estate broker nor a lawyer were involved in the sale and that a preliminary title report was not obtained. All documents used in the transfer of the house were prepared by Ute. Frazer also testified that he did not obtain from Ute a release of the mortgage on which he and his wife were liable. Frazer testified that after the sale he contacted the real estate agent through whom he purchased the home originally and she estimated the value of the house to be $115,000 to $125,000.

Frazer testified that he placed the money he received on the sale in his checking account and that approximately $5,000 remained. Frazer purchased a new pickup truck for $16,000 cash. He testified that his previous truck had been damaged in an accident five months before and that he needed the truck for his job. Frazer also testified that he used $16,000 of the sale proceeds to repay a loan his mother had made to him for the purchase of the house.

Frazer testified that he did not discuss the sale of the house with his wife. He stated Norma had been under psychiatric treatment for depression and schizophrenia since 1976. Frazer testified that his wife's comprehension was limited and that she could not handle the responsibility of taking care of the children and running the household. He stated that he was unable to discuss anything reasonably with his wife. Frazer handled all family financial matters and purchased the family's food and clothing. Frazer testified that he sold the house because he could not afford to pay his wife's medicine bills and the expenses of the house.

Third-party defendant Ute Schmidt testified that she is employed as a librarian at Northwestern University. She testified that she heard about the fact that the house was for sale from someone at work. After driving by the house she told her friend to contact the owner. Frazer called her and they made arrangements for her to see the house. She viewed the interior of the home twice and neither time did she see Norma or the children. Ute stated that the interior of the house was "very dirty and messy" with broken windows and doors, torn furniture and torn wallpaper. She testified that Frazer wanted $120,000 for the house but after her second visit he accepted her offer of $90,000. Ute testified that she prepared the real estate contract by comparing it to forms she had from the purchase of her other house. Ute paid $8,000 in earnest money and $30,378.21 at closing for the purchase of the house. The mortgage balance was $49,677.24 as of August 4, 1982. Ute stated that she had been making mortgage payments since she moved into the house. She also testified that she

owned a home in Wilmette. Ownership of that house was shared by Ute, her mother's estate and Ute's former husband who is required by their divorce decree to make the mortgage payments. She testified that the house had been on the market but that her former husband had taken it off since they were not able to sell it.

On August 25, 1982, the trial court determined from all of the evidence that "the purported sale by Mr. Pahlke to Miss Dominick was a sham. They acted in concerted collusion to deprive Mrs. Pahlke of her share, what ever that may be, in the home ***." The trial court granted Norma's petition for constructive trust and rule to show cause. The court restored Norma to possession of the house and held Frazer in contempt of court for violating the preliminary injunction entered when Norma filed her praecipe for summons. On September 7, 1982, the trial court further ordered that because Norma's emotional health was endangered, she was given exclusive possession of the house and Frazer and Ute were restrained from reentering the property for 10 days.

Ute first argues that she was denied due process of law by the courts' failure to appraise her, appearing *pro se,* of the possible orders that could be entered against her. Norma argues that Ute was notified of all the hearings, of the nature of the proceedings, was present in court at each hearing and filed appropriate responsive pleadings.

The record reveals that Ute was informed of her right to be represented by an attorney. We observe that the pleadings filed by Ute appear to resemble those regular and customary pleadings filed by an attorney or someone with legal knowledge. We also observe in passing that the notary on Ute's pleadings bears the same name as Frazer's attorney. When opposing counsel questioned Ute about her pleadings, she testified that she had prepared them herself and that someone, who she would not name, had helped her. She stated, "I don't want to put [*sic*] any one in trouble here. I did this myself. I asked around."

■ Once a party has chosen to waive counsel and represent himself, he is responsible for his own defense and he may not expect favored treatment from the court. (*Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 21, 392 N.E.2d 371, 375; see *Biggs v. Spader* (1951), 411 Ill. 42, 46, 103 N.E.2d 104, 107, *cert. denied* (1952), 343 U.S. 956, 96 L. Ed. 1356, 72 S. Ct. 1051.) From the record in this case, respondent's choice to represent herself *pro se* and the conduct of the court proceedings did not result in a denial of due process.

Ute next contends that the trial court cannot adjudicate property rights and claims between the parties to a dissolution action before entry of the decree of dissolution. Ute argues that the jurisdiction of

courts of chancery to determine divorce cases depends on the grant of the statute not on general chancery power. Under the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*), the court has power to adjust equities and determine rights of one party in the property of the other party where a divorce has been granted. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382; *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674, 677, 413 N.E.2d 486, 489.) Ute argues that with respect to third parties, relief while a divorce action is pending is expressly limited to restraining orders prohibiting the transfer, encumbrance, concealment or other disposition of property during the pendency of the dissolution action (Ill. Rev. Stat. 1981, ch. 40, par. 501(a)(2)(i)).

Ute also contends that the proceedings resulted in a complete adjudication of the property rights asserted by the parties despite the fact that the proceedings were initiated by a petition for a rule to show cause and the parties' divorce case is still pending. Ute asserts that Norma's attorney told the court "*** all we are asking Your Honor to do is to maintain the status quo as of the moment before the conveyance ***." Norma argues that domestic relations courts are clothed with the equitable remedies necessary to effectuate compliance with the Act and that this includes the authority to impose a constructive trust.

The trial court judge in the domestic relations division has jurisdiction to hear all issues which are justiciable in nature. (*In re Marriage of Peshek* (1980), 89 Ill. App. 3d 959, 412 N.E.2d 698.) The IMDMA expands the panoply of remedies available to the courts. (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.) Section 503 of the IMDMA replaced the common law "title" doctrine that considered only which spouse held title in the distribution of real property, with a common-enterprise theory of marriage (*Hofmann*).

Although the IMDMA makes no provision for the filing of a third-party action in a dissolution proceeding to determine the parties' rights in alleged marital property action held by the third party, the right to file a third-party action has been recognized where the alleged marital asset is held in trust (*Demos v. Demos* (1972), 8 Ill. App. 3d 906, 290 N.E.2d 304; *England v. England* (1922), 223 Ill. App. 549). In *In re Marriage of Peshek*, this court determined that a third party holding marital property should be brought into the dissolution proceedings by a third-party complaint and proper summons where it was unclear how the third party came into possession of the marital asset.

■ In the present case the parties do not argue that Norma was without property rights in the marital home. Norma and Frazer had lived in the home for six years. Norma was still liable on the mortgage. Ute was a proper third-party defendant under the circumstances of this case because she was alleged to have come into possession of the marital home through a sham transaction. See *Lerner v. Zipperman* (1979), 69 Ill. App. 3d 620, 387 N.E.2d 946.

■ Further, the evidence before the trial court was sufficient to establish clearly and convincingly the court's preliminary finding that the sale was a sham undertaken to defraud Norma of any rights she may have in the home in the pending dissolution action. (See *Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) It has been held that

"a transferee is chargeable with acquiescence in a fraudulently intended transfer where he is in possession of facts and circumstances which are not reconcilable with ordinary business integrity or would otherwise put a prudent person on inquiry." (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 225, 446 N.E.2d 499, 507.)

We find that under the unusual circumstances of this case, where the third party and the husband may have acted in collusion to deprive the wife and children of the marital home and violated the domestic relations court's preliminary injunction, the trial court did not err in granting possession of the marital home to the wife pending the dissolution of marriage.

The recent case *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499, supports our decision. The supreme court found permissible a property division following a divorce decree which gave the wife a 30% interest in farmland held by her husband's parents. That farmland had been transferred to the parents through the son's default on a land contract during the pendency of the divorce action. The son was purchasing the farm from his parents by a land contract under which the parents held title until the sale was completed. The son had already paid approximately $420,000 on the contract. A month and a half after the wife filed for divorce, the husband defaulted on a $5,000 installment payment. The parents immediately initiated forcible entry and detainer proceedings which the son did not contest and regained possession of the property. The son subsequently entered a land rental arrangement with his parents and continued to farm the land. The supreme court stated "fraud against marital property is not to be condoned even though it occurs before dissolution." (94 Ill. 2d 205, 220, 446 N.E.2d 499, 505.) The court determined that the son's forfeiture was in fact a fraud against his wife's marital property when measured

by whether it was intended collusively with intent to regain the property. The court also held that since the parents had acquiesced in the son's fraud, the 30% lien in the wife's favor entered against the parent's title was permissible.

We agree with Ute's argument that the IMDMA does not give the court authority to distribute property until after the dissolution of marriage has been granted (Ill. Rev. Stat. 1981, ch. 40, par. 503). (*Hofmann v. Hofmann.*) Both parties conceded at argument before this court that the proceedings below were of a preliminary nature. We also note that Ute was not given any set-off, credits or allowances. Therefore, the order of the circuit court is affirmed only to the extent that it was preliminary in character and intended to maintain the status quo pending a full and complete hearing to determine the rights of all parties. That portion of the order which purports to create a constructive trust is vacated. In light of our decision, we decline to consider the remaining issues raised by the third-party defendant.

Accordingly, that portion of the order below awarding temporary and preliminary relief is affirmed. That portion of the order creating a constructive trust is vacated. The cause is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded.

McGLOON and GOLDBERG, JJ., concur.