**UNITED STATES of America, on the relation of Neil F. HARTIGAN, Attorney General of the State of Illinois, et al., Plaintiffs,**

v.

**Dr. St. Barth ALASKA, Defendant.**

No. 82 C 1381.

United States District Court, N.D. Illinois, E.D.

Feb. 11, 1987.

John E. Huston, Karen Konieczny, Special Asst. Attys. Gen., Welfare Litigation Div., Ill. Atty. General's Office, Chicago, Ill., for plaintiffs.

Ron Lev, Ron Lev, Ltd., Chicago, Ill., Raymond Grossman, Grossman, Solomon & Fielkow, Lincolnwood, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiffs, the United States and the State of Illinois, brought this suit alleging defendant, Dr. St. Barth Alaska (Dr. Alaska), violated the Federal False Claims Act and the Illinois Public Aid Code. While this case was pending, Dr. Alaska filed suit in state court to recover on a fire insurance claim. He subsequently assigned the claim to his wife, Mrs. Dixeena Alaska, as part of their divorce settlement. After he assigned the claim, this court entered a $2.2 million judgment against Dr. Alaska. In order to attempt to partially satisfy this judgment, plaintiff now moves to set aside Dr. Alaska's assignment as a fraudulent conveyance.

### I. *Factual Background*

The timing of three separate lawsuits is relevant to this motion to set aside. First, plaintiffs filed suit against Dr. Alaska in this court in March, 1982. The suit alleged Dr. Alaska had defrauded the Medicaid program out of several million dollars by submitting hundreds of claims for optometric services which he never performed.[1]

Second, in May, 1982, Dr. Alaska filed a fire insurance claim in the Circuit Court of Cook County against Home Insurance Company. The suit sought damages of $200,000.

Third, five months later, Mrs. Alaska filed divorce papers against Dr. Alaska in DuPage County. Dr. Alaska failed to answer her complaint and the divorce court held a prove up and trial on January 18, 1983. Mrs. Alaska testified that she had no remaining assets because her husband had squandered virtually all their marital property. *See* Report of Divorce Proceedings at 11–14, 27. According to Mrs. Alaska, the only asset he had left was the $200,000 insurance claim.

Dr. Alaska attended the hearing but essentially told the court, "I don't care what you do." *Id.* at 16. He neither contested the divorce petition's allegations nor objected to the proposal that he assign the insurance claim to his wife. While Mrs. Alaska, her attorney, and of course Dr. Alaska, all knew this federal action was moving towards trial, none of them mentioned that

---

**1.** The facts underlying the case against Dr. Alaska have been set out fully in the court's earlier decision in this matter. *See United States ex rel. Fahner v. Alaska,* 591 F.Supp. 794 (N.D.Ill.1984)

fact to the divorce court. After the hearing, the judge pronounced his interim decision granting Mrs. Alaska a divorce. The decree gave Mrs. Alaska Dr. Alaska's insurance claim and any remaining household goods. She would not, however, receive any support payments from Dr. Alaska.

This court held a trial on the underlying matter on February 8–10, 1983. On February 22, 1983, the divorce court dissolved the Alaskas' marriage and officially entered the divorce decree. Dr. Alaska then assigned his fire claim to Mrs. Alaska on March 2, 1983, but he remained the named plaintiff in the insurance litigation until May 22, 1984. In the instant case, on March 21, 1983, a $2.2 million judgment was entered against Dr. Alaska, and the Seventh Circuit subsequently dismissed his appeal.

Apparently, Dr. Alaska is insolvent and without funds to satisfy the judgment. Hence, plaintiff instituted these citation proceedings to enforce the judgment in June, 1986.

## II. *Discussion*

Under Illinois law, an assignment may be set aside as a fraudulent conveyance if the transfer hinders or defeats the assignor's creditors' rights. *See* Ill.Rev.Stat. ch. 59 ¶ 4 (1986). The Illinois courts have divided transfers voidable under this section into two categories: fraud in law and fraud in fact. *See Indiana National Bank v. Gamble*, 612 F.Supp. 1272, 1276 (N.D.Ill. 1984).

### A. *Fraud in Law*

A conveyance made by an insolvent debtor for no consideration is fraudulent as a matter of law. Fraudulent intent need not be proven. *Id.* Rather, a creditor need only show the transferor (1) voluntarily gave up the property; (2) faced an existing or contemplated indebtedness; and (3) failed to retain sufficient assets to pay back his outstanding debts. *See, e.g. First Security Bank v. Bawoll*, 120 Ill.App.3d 787, 791, 76 Ill.Dec. 54, 58, 458 N.E.2d 193, 197 (2d Dist.1983). Dr. Alaska does not dispute that he transferred the insurance

claim while awaiting judgment in this case and failed to retain any assets to pay any potential judgment. Thus, the sole fraud in law issue is whether Dr. Alaska transferred the claim to Mrs. Alaska for adequate consideration.

Dr. Alaska asserts the transfer is supported by consideration because Mrs. Alaska promised to waive her right to receive support payments from her husband. Under general contract law, a promise to forebear exercising a valid claim may be good consideration for a return promise or performance. *See Ruskin v. Rodgers*, 79 Ill. App.3d 941, 951, 35 Ill.Dec. 557, 567, 399 N.E.2d 623, 630 (1st Dist.1980). However, the settlement of marital support obligations presents a special case. Unless a debtor-spouse retains sufficient means to discharge his outstanding obligations, an interspousal conveyance supported only by a release from support obligations will be deemed fraudulent as a matter of law. *See Otis v. Spencer*, 102 Ill. 622, 633 (1882); *Auburgh v. Lydston*, 117 Ill.App. 574, 577 (1905). Here, Dr. Alaska clearly failed to retain sufficient assets to pay his creditors. Indeed, he transferred *all* his property to his wife on the eve of judgment. Thus, the assignment must be set aide as a matter of law.

In so doing, the court does not cast aspersion on Mrs. Alaska's right to seek a divorce and receive a reasonable settlement. Rather, every person is "bound to be just before he is generous." *Lydston*, 117 Ill.App. at 578. Dr. Alaska, or for that matter any debtor, whatever his true intent, cannot simply avoid his creditors by clothing his transfers in the judicial robes of a divorce settlement.

Therefore, the assignment is fraudulent as a matter of law and thereby must be set aside.

### B. *Fraud in Fact*

Assuming, *arguendo*, the assignment was not fraudulent as a matter of law, it may be set aside if fraudulent in fact. Fraud in fact is established if the court finds the transferor intended to defraud his creditors. *Gamble*, 612 F.Supp. at 1276.

The debtor's intent is determined by examining the facts and circumstances surrounding the transfer. *See Thompson v. Williams*, 6 Ill.2d 208, 212, 127 N.E.2d 457, 460 (1955); *Kaibab Industries v. Family Ready Homes*, 80 Ill.App.3d 782, 786, 14 Ill.Dec. 334, 337, 372 N.E.2d 139, 142 (3d Dist.1978); *Alan Drey Co. v. Generation, Inc.*, 22 Ill.App.3d 611, 618, 317 N.E.2d 673, 679 (1st Dist.1974). Various indicia of fraud have been expressly recognized, including: (1) Pending litigation at the time the property was transferred. *See Kaibab*, 80 Ill.App. at 786, 14 Ill.Dec. at 337, 372 N.E.2d at 142. (2) The debtor is insolvent at the time of the conveyance or is rendered insolvent by it. *Drey Co.*, 22 Ill. App.3d at 618, 317 N.E.2d at 679. (3) The debtor retains effective control of the assigned asset. *See In re Marriage of Shehade*, 137 Ill.App.3d 692, 700, 92 Ill.Dec. 398, 406, 484 N.E.2d 1253, 1258 (1st Dist. 1985). (4) The transfer is made to a family member. *See Kaibab, supra.* Moreover, when the conveyance is between spouses and leaves the debtor insolvent, the debtor has the burden of dispelling implications of fraud. *Thompson, supra.*

■ Dr. Alaska contends his limited role in the transfer demonstrates he did not intend to defraud the plaintiff. He maintains he never discussed the settlement with his wife and simply accepted the conditions imposed by the court. *See* Plaintiff's Exhibit (Pf's Exh) A at 35, C at 44. Yet, Dr. Alaska retained influence over the insurance litigation after the divorce was final and even after Mrs. Alaska replaced him as the named plaintiff. *See* Heytow Affidavit at Pf's Reply Brief Exh. E. In addition, his outward display of apparent disinterest is incredible given the bitterness he harbored against the government who uncovered his Medicaid fraud. Pf's Exh. C at 26–27.

Moreover, the remaining facts paint a clear picture of fraud. Dr. Alaska assigned his last valuable asset to his wife only three weeks before the trial in this case began. The transfer left Dr. Alaska completely insolvent and unable to satisfy any judgment. The transfer then was finalized after the trial and while Dr. Alaska awaited the court's verdict. Most importantly, neither Dr. nor Mrs. Alaska ever informed the divorce court of this case and its potential ramifications. *See Kardynalski v. Fisher*, 135 Ill.App.3d 643, 650, 90 Ill.Dec. 410, 415, 482 N.E.2d 117, 122 (2d Dist.1985); *Wilkey v. Wax*, 82 Ill.App.2d 67, 74, 225 N.E.2d 813, 816 (4th Dist.1967).

■ Of course, a husband may transfer assets in lieu of alimony to his wife and still act within the boundaries of the law. Yet, the dissolution of marriage "was certainly never intended to be a vehicle to effect a fraudulent end, or to transmute that which would otherwise be fraudulent into something lawful." *Id.* at 75–76, 225 N.E.2d 813. In the case at bar, lurking behind the veneer of a division of assets is nothing less than an unabashed attempt to defraud. Therefore, looking at all the circumstances surrounding the assignment, the court finds Dr. Alaska intended to fraudulently hinder plaintiff's rights. Thus, the transfer of the fire insurance claim is fraud in fact and must be set aside.[2]

## III. *Conclusion*

Plaintiff's motion to set aside Dr. Alaska's assignment of a fire insurance claim to Dixeena Alaska as a fraudulent conveyance is granted. The court hereby orders the

---

**2.** Defendant also argued the plaintiff's action should be barred by laches. A public body, acting in its governmental capacity, will only be subject to a laches defense under extraordinary circumstances. *See Hickey v. Illinois Central Railroad*, 35 Ill.2d 427, 448, 220 N.E.2d 415, 426 (1966), *cert. denied*, 386 U.S. 934, 87 S.Ct. 957, 17 L.Ed.2d 806 (1967). In this case, plaintiff has not taken any "positive acts" to induce the attempts to settle the fire insurance claim. *Id.* Mrs. Alaska's reliance on mere inaction by state officials, particularly when she participated in the fraud and knew the substantial judgment remains unsatisfied, is insufficient to invoke laches. Moreover, Mrs. Alaska will be entitled to support from Dr. Alaska to replace the insurance transfer. Hence, she has not been sufficiently prejudiced by the delay to constitute the extraordinary circumstances envisioned by *Hickey.*

proceeds of the fire insurance claim transferred to the plaintiff.