*In re* MARRIAGE OF JANINA LIGAS, Petitioner-Appellee, and FRANK LI-
GAS, Respondent-Appellant.

First District (4th Division)   Nos. 81—1536, 81—3081 cons.

Opinion filed October 28, 1982.

Joseph H. Becker, Norman Becker, and Selwyn Blum, all of Chicago (Gary E. Dienstag, of Springer, Casey, Haas, Dienstag & Silverman, of counsel), for appellant.

Lawrence Jay Weiner and Fredric Bryan Lesser, both of Lawrence Jay Weiner & Associates, and Rinella & Rinella, both of Chicago, for appellee.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Respondent, Frank Ligas, and petitioner, Janina Ligas, were granted a dissolution of their marriage by the circuit court of Cook County. The court divided the material property between the parties and awarded Janina Ligas custody of the children with reasonable visitation by respondent. The court also awarded petitioner attorney fees. Respondent appeals from that judgment.

The issues raised for review are (1) whether the trial court erred in its valuation, apportionment and disposition of marital property; (2) whether the court erred in its determination of respondent's net income and erroneously attributed to him $27,000 in a savings account held jointly with his mother; and (3) whether the trial court erred in awarding attorney fees to petitioner.

We affirm.

The parties were married on November 23, 1967, in Poland. There were two children born of the marriage: a boy and girl, born

August 18, 1971, and May 17, 1969, respectively. Respondent came to the United States with petitioner in January 1968.

Both parties worked throughout the marriage. From 1972 until 1980, respondent worked as a machinist earning approximately $280 per week after taxes. Petitioner worked in various factory jobs earning approximately $6,000 per year. In 1972, the parties purchased land in Marengo, Illinois, for $4,500, and in 1973, they purchased a two-flat apartment building located at 4372 North Neva in Norridge, Illinois, for $80,000.

There was conflicting testimony but it appears that the down payment on the apartment building was either $40,000 or $41,500. Either $22,000 or $28,000 of the down payment was from the joint savings of the parties and the remainder was borrowed from relatives. Respondent testified that he still owes approximately $10,000 of the debt to his relatives, but that petitioner's relatives have been repaid.

In 1977, respondent used joint funds to purchase a tavern business called the Gospoda. The business was incorporated and the stock is owned equally by petitioner and respondent. Between May 1977 and March 1980, respondent worked as a full-time machinist while also operating the tavern. There was testimony that petitioner worked in the tavern occasionally for about one year. In 1980, respondent quit his job as a machinist in order to work in the tavern full time.

The tavern's annual gross receipts were approximately $60,000 to $70,000 by respondent's testimony. There is no corporate checking account. Respondent writes down the daily totals in a book which he gives to his bookkeeper. Respondent has no employees at the tavern, but occasionally friends or relatives assist him. Respondent rents the entire building in which the tavern is located for $648 per month. He and his parents live above the tavern and he subleases the third floor for approximately $100 per month.

Susan Docal, an accountant, testified for petitioner that in her opinion the tavern business is worth $30,000 to $35,000. Alvin Baresch, respondent's accountant, testified that the tavern is worth $15,000. The gross receipts for the year 1978 were approximately $66,000, and for 1979 and 1980 they were $59,000 each year.

There was no expert appraisal of the apartment building owned by the parties. Respondent contended the building was worth $160,000 to $170,000, while petitioner assessed the value at $100,000 to $125,000. Petitioner and the two children live in the apartment building. The second floor is rented for $280 per month and the basement is rented for $175 per month. The monthly mortgage payment

for the building is $471 including taxes.

There was voluminous testimony regarding various bank accounts held by petitioner and respondent during their marriage. Respondent and his mother testified that they also have had joint savings accounts over the years. The mother testified that she earns $350 net every two weeks and almost all of it is deposited into the savings accounts held jointly with respondent. She further testified that respondent pays the rent and gives her money for the upkeep of the home.

After hearing all the testimony, the findings made by the trial court in pertinent part are: (1) the value of the lot in Marengo was $24,000; (2) the value of the tavern was $35,000 and its net profits for 1980 were $34,612; (3) the value of the apartment building was approximately $110,000 and its current mortgage debt was $26,260; (4) respondent is the owner of all the money in two savings accounts held jointly with his mother, amounting to $27,000; and (5) respondent's net income was $35,000.

The court ordered respondent to pay $135 per week child support. Respondent was awarded the tavern business, the lot in Marengo, Illinois, as well as the $27,000 held in the joint savings accounts with his mother. Petitioner was awarded the apartment building and all the furniture as well as all bank accounts in her name. Respondent remained responsible for repaying the $10,000 owed to his relatives for the down payment on the apartment building. Respondent was also ordered to pay petitioner's attorney fees of $2,250.

Shortly after respondent filed a notice of appeal, petitioner filed a motion seeking prospective attorney fees to defend the appeal. On November 17, 1981, the trial court granted petitioner's motion and awarded $2,000 in prospective attorney fees to defend the appeal. Respondent filed notice of appeal from that order also. Both appeals have been properly consolidated before this court.

Respondent argues that the trial court erred in its valuation, apportionment and disposition of the marital property, as well as the awarding of child support. Respondent states that there was no evidence whatsoever as to the value of the marital property, especially the apartment building which was the major asset of the parties. Therefore, the trial court could not have made an award in just proportions. We reject this argument.

There was lengthy testimony as to the individual purchase price of the tavern, the apartment building and the land in Marengo, Illinois. Additionally, evidence of the following was presented: (1) the net/gross income of both parties; (2) the net/gross income generated by the tavern and the apartment building; (3) the living expenses of

the parties; (4) the cost of operating the tavern and the apartment building; (5) the earning potential of the parties; (6) the resale value of the tavern; and (7) the mortgage debt owed on the apartment building.

The standards for the division of property as set forth in section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 503) provides in pertinent part:

"(c) In a proceeding for dissolution of marriage or declaration of invalidity of marriage, or in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's non-marital property to that spouse. It shall also divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:

(1) contribution or dissipation of each party in the acquisition, preservation or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;
* * *

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;
* * *

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;
* * *

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity for each spouse for future acquisition of capital assets and income."

The touchstone of proper apportionment is whether a direct distribution is equitable in nature. The trial court is not required by the statute to divide the property with mathematical equality. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1132, 398 N.E.2d 126, 132.) The distribution of marital property rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 458, 426

N.E.2d 1087, 1091.

■ We find no abuse of discretion in the instant case. The trial court had ample basis for its division of the property. Merely because a party is unhappy with the disposition does not mean that the disposition is unfair. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1133.) It should be noted that the court order specifically said that the petitioner was awarded the apartment building in lieu of permanent maintenance, and the order barred her from seeking maintenance in the future.

■ Similarly, we find no abuse of discretion in the amount of child support awarded petitioner. The court was well aware of the expenses and liabilities of the parties and of the available resources. In fact, the court's ruling reflects a decrease from $170 per week under the temporary child support order to $135 per week in its final order. Before ruling, the court commented that it had analyzed the child support issue and had resolved it in a manner that he thought "satisfactory." The court had before it all the information necessary to make a just determination. The record reflects that the trial court based its decision on the totality of circumstances.

We hold, therefore, that there was sufficient evidence from which the trial court could make an approximate valuation of the marital property and there was ample basis for the child support award.

Respondent next contends that it was error for the trial court to award him $27,000 held in joint accounts with his mother because he claims that all or some of the money belongs to his mother. We disagree. The trial court heard testimony regarding salaries of the parties as well as respondent's mother, financial resources, length of employment, expenses of the parties and many other factors. The court stated in its findings: "[E]vidence presented by the respondent and his mother as to the source of the funds now on deposit in the joint savings account [sic] in the names of the respondent and his mother is not credible and rejects said testimony."

■ In a bench trial, the credibility of the witnesses and the weight to be accorded their testimony are to be determined by the trier of fact. (*Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 889, 365 N.E.2d 433, 441.) Unless manifestly against the weight of the evidence, the findings of the trier of fact will not be disturbed. (*Northbrook Trust & Savings Bank v. County of Cook* (1977), 47 Ill. App. 3d 879, 889.) We cannot say that the trial court's finding regarding the $27,000 in the joint bank accounts was manifestly against the weight of the evidence. We hold, therefore, that no error was committed in apportioning and awarding

the $27,000 to respondent.

Respondent's final contention is that the trial court erred in awarding attorney fees to petitioner. The trial court entered two separate orders for attorney fees: (1) $2,250 (approximately 56% of the total) to be paid to petitioner's attorney for representation in the dissolution proceedings; and (2) $2,000 prospective attorney fees to defend the appeal taken by respondent. Respondent argues that the $2,250 awarded petitioner's attorney is excessive since petitioner has received an asset worth $94,000. We disagree.

The granting of fees in a divorce case is proper when there is a showing of the financial inability of one party to pay the fees and the ability of the other to do so. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1093, 412 N.E.2d 1336, 1348.) However, financial inability is not equated with destitution. Rather, it is sufficient to support the award of fees that the party seeking the fees would be stripped of his or her financial resources if required to pay. *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 458, 387 N.E.2d 1254, 1260.

In the instant case, the trial court determined that petitioner's income was approximately $100 per week and that respondent's net income was approximately $35,000 per year. Contrary to respondent's argument, petitioner is not required to sell the apartment building awarded her in order to pay her attorney fees. See *Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.

In determining whether the amount of fees awarded is reasonable, the factors to be considered are as follows: "(1) the skill and standing of the attorneys employed; (2) the nature of the controversy, and the novelty and difficulty of the questions at issue; (3) the amount and importance of the subject matter, especially from a family law standpoint; (4) the degree of responsibility involved in the management of the case; (5) the time and labor required; (6) the usual and customary charge in the community; and (7) the benefits resulting to the client." *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1093, 412 N.E.2d 1336, 1348.

The trial court was aware of these factors and made its determination based on the totality of circumstances. We find no abuse of discretion and will not disturb the trial court's ruling.

The second part of respondent's objection to the award of attorney fees to petitioner concerns the award of prospective attorney fees to defend this appeal. It should be noted that the trial court held a hearing before ruling on petitioner's motion for prospective attorney fees. The record of that hearing was not presented to this court on appeal.

Respondent argues that the trial court had no authority to award prospective attorney fees to defend this appeal and cites the following cases in support of his position: *In re Marriage of Justema* (1981), 95 Ill. App. 3d 483, 420 N.E.2d 796, *In re Marriage of Wright* (1981), 92 Ill. 3d 708, 415 N.E.2d 1196, *vacated* (1982), 84 Ill. 2d 498, 434 N.E.2d 293, *Sherman v. Sherman* (1979), 74 Ill. App. 3d 451, 393 N.E.2d 67, and *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 360 N.E.2d 386.

However, another line of cases holds the opposite view. (*In re Marriage of McBride* (1981), 102 Ill. App. 3d 84, 429 N.E.2d 867; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087; *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 419 N.E.2d 598; *In re Marriage of Raidbard* (1980), 87 Ill. App. 3d 158, 408 N.E.2d 1021.) In *In re Marriage of Giammerino*, the court held that the award of prospective attorney fees is merely collateral to the appeal and involves a matter independent of any question raised by the appeal. (*In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1061.) The trial court has jurisdiction to hear matters independent of and distinct from issues involved in the appeal. *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 1060.

We believe the reasoning of the court in *Giammerino* is applicable here. The petitioner filed a new petition for prospective attorney fees, and a hearing was held on that issue. Under the reasoning of *Giammerino*, this was an independent issue and merely collateral to the divorce proceedings which had just been concluded. As the court in the *Giammerino* case pointed out, although there is nothing inherently improper in awarding prospective attorney fees, such awards should be made cautiously. Here, the petitioner's financial resources were limited, while respondent was in a financial position to pay.

■ We hold, therefore, that the trial court did not err nor abuse its discretion in awarding petitioner prospective attorney fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.