*In re* MARRIAGE OF NORMA PAHLKE, Petitioner-Appellee, and FRAZER PAHLKE, Respondent-Appellant (Ute Schmidt, a/k/a Ute Domnick, Third-Party Defendant-Appellant).

First District (1st Division)   Nos. 84—2015, 85—0074, 85—2246 cons.

Opinion filed March 23, 1987.

Richard Gigante, P.C., of Chicago, for appellant Frazer Pahlke.

Paul R. Jenen, of Chicago, for appellant Ute Schmidt.

Grant & Grant, of Chicago (Jerome Marvin Kaplan, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This is the second appeal concerning the disposition of the marital property in the divorce proceedings between the petitioner, Norma Pahlke, and the respondent, Frazer Pahlke. In our earlier decision we affirmed a preliminary order of the trial court which held that the sale of the marital residence by Frazer to third-party defendant, Ute Schmidt, was a sham transaction and granted temporary possession of the home to Norma. (*In re Marriage of Pahlke* (1983), 120 Ill. App. 3d 1009, 458 N.E.2d 1141.) Frazer now appeals from the final judgment entered in the marriage dissolution proceedings contending that the trial court (1) abused its discretion in dividing the marital property unequally in favor of Norma; (2) abused its discretion in awarding Norma maintenance and child support; (3) improperly required Frazer to pay the major portion of Norma's attorney fees and the attorney fees for the minor children; and (4) erred in awarding Norma prospective attorney fees to defend Frazer's appeal. Frazer and Ute Schmidt both argue on appeal that the final judgment of the trial court declaring the sale of the parties' marital residence to be a sham transaction was against the manifest weight of the evidence.

The parties were married in May 1964. Four children were born to the marriage. In August 1982, Norma filed a petition for dissolution of marriage. Prior to trial the parties entered into a stipulation that each of them would have custody of two of the four minor children of the parties. Frazer was 44 years old at the time of trial and Norma was 42 years old.

At trial, Frazer testified that in 1976 he purchased the marital residence in Glenview, Illinois, for $93,500. $24,000 of the purchase price was loaned to him by his mother, Lillian Pahlke. Title to the home was placed in a land trust with Frazer as the beneficiary and Norma as the contingent beneficiary. Without informing Norma, Frazer sold the marital home in April 1982 to Ute Schmidt for $90,000. Thereafter, Norma filed a petition seeking imposition of a constructive trust in her favor on the marital residence.

At a preliminary hearing in August 1982, the trial court entered an order granting the petition and declaring the sale of the residence to be a sham and awarding temporary possession of the residence to Norma. On review, this court affirmed the trial court's finding that the sale was a sham transaction "where the third party and the husband may have acted in collusion to deprive the wife and children of the marital home." (120 Ill. App. 3d 1009, 1015, 458 N.E.2d 1141, 1146.) We further affirmed the award to Norma of temporary possession of the marital residence and vacated that portion of the order creating a

constructive trust.

Frazer further testified that at the time he sold the marital residence, he sold other items of personal property to Ute Schmidt which the parties had acquired during the marriage, including a piano, a lawnmower, and a freezer. Frazer had earned approximately $23,000 in 1983 from his employment as an environmental engineer. He had a pension benefit through his employer with a vested monthly pension benefit in the amount of $324 at age 65. The value of the accrued pension at the time of trial was $5,200. Frazer also owned a truck which he purchased in May 1982 for $16,400. He stated that during the marriage, his wife suffered from periods of depression, schizophrenia, and unhappiness.

Norma testified that she was employed as a staff nurse in a nursing home earning approximately $18,000 per year. She stated that she had several outstanding medical and dental bills both for herself and her children. She further testified that she owed her mother the sum of $15,000 at the time of trial. She had borrowed these funds in a three-to-four-month period after she had moved back into the marital residence and when she was unemployed. She stated that $11,000 of the $15,000 was paid directly to the clerk of the court in order to forestall foreclosure action on the marital home.

Ute Schmidt testified that she worked at Northwestern University as a librarian. She heard that Frazer was selling his home from fellow employees. When she first saw the home, both the interior and exterior of the building were in very poor condition. Frazer told her that the purchase price was $120,000. At a second meeting, a few weeks later, Frazer accepted her offer of $90,000 for the home. She prepared the real estate contract and the closing statement and obtained the figures on the mortgage and taxes from Frazer.

A judgment for dissolution was entered in July 1984. Norma was awarded the marital home, and Frazer was given a lien on the home of $10,000 to be repaid upon the first to happen of the sale of the home, the remarriage of Norma, or upon their youngest child reaching the age of 18. Norma was awarded all the furniture then in the marital home, and Frazer was required to return any marital furniture in his possession to the marital residence. Norma was also awarded the 1975 Chevrolet of the parties. The court entered a judgment in favor of Ute Schmidt and against Frazer in the amount of $41,284.16. Frazer was required to pay Norma $300 per month in child support for the two minor children in her custody as well as $150 per month in maintenance. Frazer was required to maintain his present life insurance with his four children designated as irrevocable beneficiaries and to main-

tain hospitalization insurance for the four minor children. He was also made responsible for all extraordinary medical and dental expenses. Both parties were ordered to be responsible for the college education of the minor children, commensurate with their financial ability to pay.

Both Norma's attorney and the attorney for the minor children, filed a petition seeking payment of attorney fees. Norma's attorney argued that Frazer should be required to pay Norma's attorney fees as a result of his financial misconduct in this case since it was he who caused the sham sale of the marital residence necessitating a preliminary appeal in these proceedings. The trial court entered an order requiring Frazer to pay $17,000 of the $18,000 in attorney fees incurred by Norma. Frazer was further required to pay $5,337 of the total fees incurred of $6,337 by the minor children's attorney. The trial court found that, while Frazer's income had been reduced from $35,000 to $23,000 a year as a result of a depressed economy, he had the ability to improve his income. The trial court further found that Norma had done a good job rehabilitating herself, but that her economic future did not appear secure.

We first turn to the argument raised for the second time on appeal by Frazer and Ute Schmidt that the determination of the trial court declaring the sale of the marital residence to be a sham transaction was against the manifest weight of the evidence. On remand, the trial court found that the sale by Frazer to Ute was a sham transaction and that the testimony of Frazer and Ute was not credible. Frazer and Ute contend that the conveyance was an arms' length transaction in the ordinary course of business and the sale of the residence was an attempt to conserve equity and prevent Norma from dissipating the marital estate.

● It is well established that "fraud against marital property is not to be condoned even though it occurs before dissolution." (*Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 220, 446 N.E.2d 499.) When the characterization of a transfer of marital assets is questioned by a spouse, fraud is properly assessed by referring to the donative intent of the settlor. (94 Ill. 2d 205, 446 N.E.2d 499.) A "colorable" or "illusory" transaction exists where the transferor had no intent to convey any present interest in the property but intended to retain complete ownership. (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185.) Where the transfer is of real property, it can be voided only upon a showing of clear and convincing evidence. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.

■ In reviewing the testimony presented at the hearing on remand, we find no basis for reversing our prior determination that the

sale of the marital residence was a sham transaction. We believe there was sufficient evidence to establish clearly and convincingly that the sale was a sham transaction intended to defraud Norma of her share of the proceeds of the marital residence. Neither a real estate broker nor an attorney was involved in the sale. Ute testified that she never purchased title insurance to the property and that she prepared the real estate contract and closing statement herself after obtaining the necessary figures from Frazer. Ute also knew that Norma was in possession of the premises on the day of the purchase. Frazer testified that he had no prior conversations with his wife concerning the sale of the marital residence and suggested that the secret conveyance was justified as a divorce tactic. He sold the house to Ute for $90,000 in 1982 although he purchased the home in 1976 for $93,500 and there was evidence presented that the house had been appraised at a value of $120,000. Lillian Pahlke, Frazer's mother, testified that Frazer repaid her in cash the $16,000 she gave him as a down payment for the home but could not recall whether she deposited the money in a bank account. In our opinion, these are facts and circumstances which would put an ordinarily prudent person on inquiry that this was a fraudulent transfer. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 446 N.E.2d 499.

Frazer next argues that the trial court abused its discretion in dividing the marital property unequally in favor of Norma. Frazer specifically contends that the trial court improperly awarded Norma the major portion of the marital assets where he made the major contribution towards the assets and where Norma allowed the home to go into foreclosure proceedings.

■ Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act requires that the court divide marital property in just proportions considering all relevant factors. (Ill. Rev. Stat. 1983, ch. 40, pars. 503(d)(1) through (7).) Decisions construing the Act have established that an equitable division of marital property is not necessarily an equal one and the court can properly award one spouse a greater share where the relevant factors warrant that result. (*In re Marriage of Rossi* (1983), 113 Ill. App. 3d 55, 446 N.E.2d 1198.) The trial court has broad discretion under the Act, and its apportionment of property will not be disturbed absent an abuse of that discretion. (*In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.) Those factors listed in the statute which are particularly relevant to this cause are: the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value of the marital property; the duration of the marriage; the relevant economic circumstances of each spouse when the division of property is to become

effective; the custodial provisions for the children; the age, health, occupation, amount and sources of income, employability, and needs of each of the parties; and the reasonable opportunity of each spouse for future acquisition of capital assets and income.

■ In the case at bar, Frazer had an 18-year history of earnings prior to trial, while Norma had only a recent employment history. The trial court specifically found that, although Norma had a prior history of mental illness, she had done a good job in rehabilitating herself. Frazer earned from $22,000 to $35,000 as his gross annual income during the period 1980 through 1984. Norma became employed in January 1983 and her earnings were $18,000 per year. Under these circumstances, we do not believe Norma had a sufficient history of employment to put her on equal footing with Frazer. Because of the disparity in income, and although Frazer was awarded custody of two of the minor children, we find no abuse of discretion in awarding Norma the greater portion of marital assets. Norma's ability to acquire capital and assets in the future is, at best, uncertain. The long duration of the marriage, for a period of almost 20 years, warrants a substantial division of the marital assets to Norma. Finally, we find the argument that Norma caused a dissipation of the marital assets by allowing the marital residence to go into foreclosure proceedings without merit. Although foreclosure proceedings were initiated, Norma's failure to make mortgage payments was based on Ute Schmidt's claim that she was the owner of the property. Further, Norma made the necessary payments to cure any default in the mortgage. We find that any dissipation in the value of the marital residence was as a result of Frazer's action in conveying the residence in a sham transaction. Accordingly, we conclude that the apportionment of marital property made by the trial court did not constitute an abuse of discretion. See *In re Marriage of McNeeley* (1983), 117 Ill. App. 3d 320, 453 N.E.2d 748.

■ Frazer next argues that the trial court abused its discretion in awarding maintenance and child support to Norma. The judgment for dissolution of marriage awarded each party custody of two of the four minor children. Frazer was ordered to pay the sum of $150 per month as maintenance and $300 per month as child support for the two children in the custody of Norma. Frazer testified that his net monthly income was $1,450. In reviewing these figures we note that the amounts allocated for maintenance and child support represent 30% of Frazer's net pay and are below the minimum amounts set by the guidelines for child support and maintenance in sections 504 and 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, pars. 504, 505). Further, the judgment provided that

Norma would receive the marital residence and a $2,800 bank account. These assets will generate little or no income. In light of Norma's medical history and the fact that she had been working for a period of only 16 months at the time of trial, we believe the trial court was properly concerned about her ability to contribute to her support in the future. Frazer testified that his income was $23,000 in the year prior to trial, but further stated that in 1982 his earnings were between $32,000 and $35,000 per year. In our view, the trial court could reasonably infer that his decline in earnings was only a temporary situation which would improve following the divorce proceedings. (See *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773.) Under these circumstances, we find no abuse of discretion in the awards of maintenance and child support to Norma. *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066.

We next consider Frazer's contention that the trial court abused its discretion in requiring him to pay $17,000 out of $18,000 of Norma's attorney fees and $5,337 out of $6,337 of the minor children's attorney fees. The judgment of the trial court found that this case was controversial and complex and that "the attorneys demonstrated a high degree of skill and expertise in their respective representations of the parties." The court stated that Norma suffered from mental illness, and although she was employed and awarded the marital residence, her economic future was uncertain. The judgment found that Frazer had the better ability to pay attorney fees and to improve his income.

While the payment of attorney fees is the primary obligation of the party for whom the services are rendered (*In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947), the court has discretion to award such fees where a party can show inability to pay and the ability of the other spouse to do so (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005).

In this case, Norma's resources are limited, she has no income-producing assets, and her future employment is uncertain. Frazer's earnings history is stable and undoubtedly will improve in the future. Further, we note that a substantial portion of the fees incurred in these proceedings was necessitated by Norma's attempt to set aside the sham transaction of the conveyance of the marital residence by Frazer to Ute Schmidt. Since the trial court based its award of fees to Norma on the parties' relative economic positions during the litigation and on Frazer's greater ability to acquire assets in the near future, we find no abuse by the trial court in the award of Norma's attorney fees and the fees of the minor children.

The final contention by Frazer is that the award of $2,000 to

Norma for attorney fees to defend this appeal was improper. Frazer argues that the fee order entered by the trial court is void in that the authority for granting that order, section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508(a)), does not authorize an award of prospective attorney fees and that the statute is unconstitutional.

Section 508(a) provides in pertinent part:

"(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse, which award shall be made in connection with the following:

* * *

(3) The defense of an appeal of any order or judgment under this Act, including the defense of appeals of post-judgment orders." Ill. Rev. Stat. 1983, ch. 40, par. 508(a).

Section 508 of the Illinois Marriage and Dissolution of Marriage Act replaces section 15 of the prior Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 16). Both statutory provisions allow reasonable attorney fees and expenses in an appropriate case. (*Riddlesbarger v. Riddlesbarger* (1952), 348 Ill. App. 31, 107 N.E.2d 770.) Section 508 was modeled in part after section 313 of the Uniform Marriage and Divorce Act (Uniform Marriage and Divorce Act, sec. 313). Section 313 of the Uniform Act was designed to equalize the status of the parties in a divorce proceeding. (*In re Marriage of Franks* (1975), 189 Colo. 499, 542 P.2d 845.) Similarly, the underlying objective of section 508 has been interpreted as diminishing any advantage one spouse may have over the other in the presentation of a case due to a disparity in their respective financial resources. *In re Marriage of Erby* (1980), 84 Ill. App. 3d 672, 406 N.E.2d 79.

Although other districts of the Illinois Appellate Court have held to the contrary (*In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 435 N.E.2d 1361; *In re Marriage of Justema* (1981), 95 Ill. App. 3d 483, 420 N.E.2d 796; *In re Marriage of Wright* (1980), 92 Ill. App. 3d 708, 415 N.E.2d 1196), the first district has expressly approved the awarding of prospective attorney fees to defend an appeal where the award is made cautiously and with a basis in the record (*In re Marriage of Savas* (1985), 139 Ill. App. 3d 68, 486 N.E.2d 1818; *In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 441 N.E.2d 1277; *In re Marriage of Edelberg* (1982), 105 Ill. App. 3d 407, 434 N.E.2d 440; *In re Marriage of Theeke* (1981), 105 Ill. App. 3d 119, 433 N.E.2d 1311; *In*

*re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087; *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 419 N.E.2d 598). In accord with these decisions, we hold that the trial court had authority to award Norma prospective attorney fees to defend the appeal where her financial resources were limited and Frazer was in a financial position to pay.

Frazer contends that the statute violates the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, sec. 1) in that the trial court lost jurisdiction to award attorney fees under the supreme court rules upon the filing of the notice of appeal (87 Ill. 2d Rules 301, 303). Where there is a conflict between the supreme court rules and an Illinois statute with reference to an appeal procedure, Frazer contends that the statute must be found unconstitutional. The jurisdictional question raised here was specifically addressed by this court in *In re Marriage of Giammerino* (1981), 94 Ill. App. 3d 1058, 419 N.E.2d 598. In *Giammerino*, this court held that a trial court retains jurisdiction to award fees under the Illinois Marriage and Dissolution of Marriage Act for defending an appeal even after the filing of the notice of appeal, on the rationale that the award of attorney fees is subsequent in time and merely collateral to the appeal and involves a matter independent of any question raised by the appeal. Subsequent decisions of this court have followed the *Giammerino* analysis (*In re Marriage of Savas* (1985), 139 Ill. App. 3d 68, 486 N.E.2d 1818; *In re Marriage of Ligas* (1982), 110 Ill. App. 3d 1, 441 N.E.2d 1277; *In re Marriage of Theeke* (1981), 105 Ill. App. 3d 119, 433 N.E.2d 311; *In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087), and we adhere to these holdings.

■ Frazer further argues that the statute is unconstitutional as a violation of the due process principles under the Federal and State constitutions. (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, sec. 2.) Frazer contends he was deprived of a protectable property interest where no prior hearing was held. The record reveals that attorneys for both parties in this case waived their opportunity for a hearing on Norma's motion for prospective attorney fees to defend this appeal and chose to stand on their pleadings. We, therefore, find this argument without merit and will not consider it.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.