**In re Frank L. BEARDEN, Debtor.**

**Peter A. Cantwell, Plaintiff**

**v.**

**Frank L. Bearden, Defendant.**

**Bankruptcy No. 03 B 30385.**
**Adversary No. 03 A 04424.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 6, 2005.

216

Telly Stefaneas (Cantwell & Cantwell), Chicago, IL, for Movant or Plaintiff.

Gregory K. Stern, Monica C. O'Brien (Gregory K. Stern, P.C.), Chicago, IL, for Respondent or Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER,
Bankruptcy Judge.

This Adversary proceeding relates to the Chapter 7 bankruptcy case of Dr. Frank L. Bearden ("Debtor" or "Defendant"). Peter A. Cantwell, on behalf of the law firm Cantwell & Cantwell (collectively "Plaintiff" or "Cantwell"), filed his Complaint seeking a determination as to whether debt owed to that firm is nondischargeable under 11 U.S.C. § 523(a)(5)(B). Plaintiff contends that a state court order awarding attorneys' fees in a marriage dissolution case was for work on issues in the nature of maintenance or support to their client Mrs. Bearden and is therefore nondischargeable. The Debtor/Defendant disagrees, contending that the attorneys' fees

relate to nondischargeable fees for disputes over property obligations.

Following trial the Court now makes and enters the following Findings of Fact and Conclusions of Law. For reasons stated, it is concluded that the debt awarded by the state court judge against Defendant is fully nondischargeable and judgment will separately enter for Plaintiff.

### FINDINGS OF FACT

1. On July 21, 2003 Dr. Frank L. Bearden filed a voluntary petition under Chapter 7 of the Bankruptcy Code. (Pl.'s Ex. 560.)[1] In his schedules, the Debtor listed the law firm of Cantwell & Cantwell as a creditor holding a judgment lien. (Pl.'s Ex. 560.)

2. On November 3, 2003, Peter A. Cantwell a principal and managing partner of Cantwell & Cantwell, filed this one-count Adversarial Complaint against the Debtor seeking determination that a judgment for attorneys' fees awarded by an Illinois divorce court judge is nondischargeable pursuant to 11 U.S.C. § 523(a)(5)(B).

3. The Debtor's ex-wife, Ms. Linda Evans ("Evans"), retained the law firm of Cantwell & Cantwell to initiate marriage dissolution proceedings in the Circuit Court of Cook County, Illinois. Plaintiff filed her petition for dissolution of marriage. (Stip.Ex.2.)[2]

4. The Debtor, a medical doctor, and Evans, a television engineer, had been married less than one year before those proceedings were started. (Stip. Ex. 2; Pl.'s Ex. 55.) During the course of their marriage, Evans and the Debtor acquired an expensive martial residence and various items of personal property, including a 1989 BMW auto and 1976 BMW auto. The couple did not have children born of their marriage, although each spouse had children from previous marriages. (Stip. Exs. 2, 3, 4; Pl.'s Ex. 55.) However, Evans had a minor child dependent on her for support.

5. Plaintiff represented Evans in the divorce proceeding from August 1990 to October 1994. (Compl. ¶ 4; Answ. ¶ 4.) After that Evans retained new counsel to finalize the divorce proceeding. (Stip. Exs. 13, 18; Pasulka Tr. at 118.)[3] Judgment was entered dissolving the marriage on July 5, 1995. (Stip.Ex.12.) That Judgment divided the marital property, assigned responsibility for the marital debts and reserved Evans' right to seek maintenance from the Debtor.

6. At the outset of the litigation of the matter entitled *In re the Marriage of Linda K. Evans (Bearden), Petitioner, and Frank L. Bearden, Respondent,* Case No. 90 D 13380, Cantwel filed a Petition for Dissolution of Marriage on August 31, 1990, which sought an award to Evans for reasonable sums as and for both temporary and permanent maintenance. (Stip.Ex.2). Within the Petition, Evans alleged that Bearden earned a substantial income well in excess of $100,000 as a medical doctor and that she did not have sufficient funds to provide for her own support. (Stip.Ex.2). Bearden subsequently admitted that he earned in excess of $100,000 but denied that he was able or

---

**1.** "Pl.'s Ex." and "Def.'s Ex." refer to Plaintiff's and Defendant's document admitted into evidence at trial.

**2.** "Stip. Ex." refers to exhibits stipulated to by the Plaintiff and Defendant and admitted into evidence.

**3.** "Tr." refers to the trial transcript date and pages of the witness referred to.

required to pay for Evans' support, thereby placing maintenance and support at issue. (Pl.Ex.55).

7. Because of her needs and Bearden's refusal to pay support, Evans filed a Petition for Contribution to Family Living Expenses, which sought support from Bearden. (Pl.Ex.32). The Petition contained allegations therein that Bearden earned an income in excess of $113,000, and that although employed Evans did not earn sufficient income or have assets available to her to provide for her and her minor child's living expenses. (Pl.Ex.32). In the Income and Expenses Affidavit attached as an exhibit to the Petition, Evans showed net monthly income of $2,453.14 against total monthly living expenses of $5,234.81, which left her with a monthly deficit of $2,715.33. (Pl.Ex. 32, page Bates stamped C01724).

8. On August 5, 1991, an Agreed Order was entered which required Bearden to provide support to Evans by paying $1,891.81 per month for the mortgage, paying all long distance telephone charges, paying one-half of the water bills, paying the ADT Alarm System bill, and paying any amount of the electric bill which exceeded $100 (Pl.Ex.37).

9. Despite acknowledging that Evans needed support by entering into the August 5, 1991 Agreed Order, Bearden failed to comply with the Order, and sought to modify the same because of an alleged loss of employment. (Pl.Ex.101).

10. Due to Bearden's claims, substantial discovery was conducted in order to ascertain Bearden's income and ability to earn income. Such discovery requests included propounding Illinois Supreme Court Rule 214 and 237 Notices to Produce, conducting depositions of the parties, and issuing various subpoenas for records from certain institutions involved with Bearden's income. (Pl. Exs. 30, 31, 46, 49, 107, 113, 125, 128, 129, 130, 131, 132, 133, 134, 136, 140, 177, 184, 185, 190, 191, 274, 275, 276, 277, 279, 280, 296, 299, and 283).

11. During the divorce litigation, Bearden also filed his first Voluntary Petition for Bankruptcy on November 12, 1993 in the matter entitled *In re Frank L. Bearden, Debtor*, Case No. 93 B 23866 in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. (Pl.Ex.565). Cantwell rendered legal services to Evans in connection with that bankruptcy proceeding, including filing a Motion to Modify Automatic Stay, and an Adversary Complaint to Determine Dischargeabilty in order to protect Evans claims for support, property rights, and rights to distribution of martial property. (Pl. Exc. 566 and 572). The Adversary Complaint also sought a determination that Bearden and Evans' joint debts were nondischargeable because such a discharge of Bearden would have placed greater financial hardship on Evans as the debts would have fallen squarely on her shoulders. (Pl.Ex.572). Because of this potential detrimental situation to Evans' financial stability, it was necessary for Cantwell to render services in the bankruptcy matter. (Pl.Exs.565–581).

12. As a result of Bearden's bankruptcy proceeding, the bankruptcy Trustee filed a Complaint to Avoid Fraudulent Conveyance. The Complaint sought to enter judgment against Evans for the value of the transfer of the marital residence by Bearden to Evans, alleging that Bearden had not received a reasonably equivalent value in exchange for the transfer of the marital residence.

13. On July 18, 2994, Cantwell filed his Motion to Withdraw as attorney for Evans because of differences which arose between Cantwell and Evans including her inability to pay Cantwell's fees.

(Stip.Ex.5). On October 24, 1994, an Order was entered by the Honorable Susan Snow in the divorce proceedings which granted leave to Cantwell to withdraw as counsel for Evans. (Stip.Ex.6).

14. Thereafter, on November 23, 1994, Peter Cantwell filed his Petition for Attorneys' Fees pursuant to Section 508 of the Illinois Marriage and Dissolution of Marriage Act. The Petition for Attorneys' Fees sought an award of fees and costs from both Evans and Bearden. (Stip.Exs.7).

15. On July 5, 1995, Judge Snow entered a Judgment for Dissolution of Marriage in the matter entitled *In re the Marriage of Linda K. Evans (Bearden), Petition, and Frank L. Bearden, Respondent,* Case No. 90 D 13380, dissolving the bonds of matrimony existing between the parties and allowing Evans to retain her former name. (Stip. Ex. 11).

16. On July 20, 1995, Judge Snow entered a supplemental Judgment for Dissolution of Marriage in the same case (Stip.Ex.12). The July 20, 1995 Judgment covered all aspects of the marital litigation, including issues of property division, division of marital debts, and issues of maintenance and support. The Judgment noted, *inter alia,* that Frank Bearden was capable of earning upwards of $140,000 per year and that Linda Evans is not a person who is entirely capable of self-support given the kind of obligations she had assumed thus far in the pendency of the dissolution proceeding and by what was likely to follow in the attorney's fee proceedings. (Stip.Ex.12). Accordingly, the Court reserved the right to maintenance on behalf of Linda K. Evans. (Stip.Ex.12). Judge Snow further ordered that a Judgment be entered in favor of Evans and against Bearden in the amount of $18,853.55 for an amounts not paid pursuant to the Order of August 5, 1991 entered by another Judge which was to be "for amounts due in the nature of past spousal support obligation and should not be dischargeable in bankruptcy." (Stip.Ex.12).

17. After entry of the Judgment for Dissolution of Marriage, the issue of Cantwell's attorney's fees still remained. In support of his claim for fees Cantwell filed his Affidavit of Attorney's Fees, Costs, and Expenses on January 9, 1996. (Stip.Ex.14). The Affidavit of Attorney's Fees reflected that $88,058.00 in fees and $3,631.35 in costs was claimed. (Stip.Ex.14).

18. On November 23, 1994, Plaintiff filed a Petition for Attorneys' Fees ("Petition") requesting payment of $88,058.00 for legal services rendered during the course of the divorce proceedings. (Stip. Ex. 7; Compl. ¶ 6; Answ. ¶ 6.) Plaintiff sought to hold both Evans and the Debtor liable.

19. The divorce court held an evidentiary hearing in which it heard testimony, and considered evidence supporting and opposing Plaintiff's Petition. At that hearing, Evans objected to the attorneys' fee petition, contesting the reasonableness and necessity of the fees. She also asserted her inability to pay and contended that the Debtor should bear the full burden of payment. (Stip. Ex. 19 at 14–15; Stip. Exs. 13 & 17; Pasulka Tr. at 133; 149.) The Debtor also objected to the Petition and asserted his inability to pay. Plaintiff defended the reasonableness of its fees and attempted to prove that both Evans and the Debtor's had the ability to pay the requested fees. In support of the claim for attorneys fees, Plaintiff filed an affidavit detailing the costs and expenses incurred representing Evans. (Stip.Ex.14.)

20. Evans' counsel at the state court Petition hearing, Mr. David Pasulka ("Pasulka"), testified at trial in this Adversary regarding the evidence submitted and considered by the divorce that demonstrated

the relative incomes of Evans and Debtor. This evidence included tax returns, asset disclosure statements, W–2 statements and Forms 1099 indicating annual income. (Pasulka Tr. at 125, 136; Pl.'s Exs. 489,-460, 583.)

21. Although 750 ILCS 508(a) was amended during pendency of the divorce proceedings, Judge Snow considered the Petition for Attorney's Fees in light of the statute as it stood prior to the amendment because the fees were for services rendered in the time period before the amendment. (Stip. Ex. 19 at page Bates stamped C02983). Before the amendment and as discussed in the Conclusions below, 705 ILCS 508(a) allowed the court, after due notice and hearing and after considering the financial resources of the parties, to order either spouse to pay reasonable sums for his or her own costs and attorneys' fees necessarily incurred and for the costs and attorneys' fees incurred or expected to be incurred by the other spouse.

22. On January 16, 1998, after the fee hearing was conducted and evidence considered, the Honorable Susan Snow rendered her Opinion and Decision on Cantwell's Petition for Attorney's Fees. She stated that she considered the Petition under 508(a) of 750 ILCS. (Stip.Ex.19). Judge Snow had heard and received evidence regarding Evans and Bearden's financial circumstances, including but not limited to their income and assets and attendant ability and/or inability to pay Cantwell's fees and determined that Cantwell's total reasonable attorney's fees were $81,1334.00, and that total allowable costs equaled $3,631.35. Judge Snow than allocated $47,500.00 of the attorney's fees and all $3,631.35 in costs to be paid by Frank L. Bearden for a total judgment in favor of Cantwell and against Bearden in the amount o $51,131.35. (Stip.Ex.19). Evans

was ordered to pay the remainder of fees and expenses awarded.

23. At the trial of this Adversary proceeding, there was offered the testimony of Cantwell and David P. Pasulka, Esq. ("Pasulka"), the attorney retained by Evans to defend against Cantwell's Petition for Attorney's fees. It was established that at the state court hearing on Cantwell's Petition for Attorney's Fees, there was evidence presented to Judge Snow demonstrating the relative incomes of Bearden and Evans and their respective abilities to pay Cantwell's Attorney Fees. That evidence included Bearden and Evans' respective U.S. Individual Income Tax Returns and Asset Disclosure Statements. That evidence demonstrated that Bearden earned a substantially larger income than Evans. (Pl. Exs. 499 and 583). The testimony of Pasulka also established that Evans' financial stability would be compromised if she was required to pay all of Cantwell's fees.

24. Plaintiff has submitted into evidence at trial of this proceeding an affidavit with detailed time entries of all work performed, contending that each time entry indicates the hours and work performed towards procurement of support and maintenance. (*See* Pl.'s Ex. 584 and 585.) Debtor does not dispute that the work was performed, but contends that not all time entries related to support and maintenance. Cantwell demonstrated which time entries within the Affidavit for Fees were services rendered towards the procurement of support for Evans by highlighting such time entries and further demonstrated that the fees arguably earned for services pertinent to Evans' maintenance and support totaled $74,858.50. (Pl. Exs. 584 and 585 admitted into evidence for demonstrative purposes).

25. Cantwell thereby demonstrated that most of the fees incurred by Evans

related to procuring support for Evans in some way. (Pl. Exs. 584 and 585 identified for demonstrative purposes).

26. For all the foregoing reasons, and also based on Judge Snow's legal analysis, the amount of $51,131.35 found owed Peter A. Cantwell from Frank L. Bearden was for work in the nature of spousal support.

### Divorce Court's Opinion and Decision Granting Attorneys' Fees

27. The opinion entered findings of fact supporting the decision, finding that several factors contributed to increase Plaintiff's work and resulting legal fees:

 A. The first factor was the Debtor's bankruptcy filing[4] and Plaintiff's additional representation of Evans in the bankruptcy court. That representation in bankruptcy court included filing a motion to modify the automatic stay; filing of an Adversarial Complaint to determine the dischargeability of debt; and defending Evans in another Adversary proceeding concerning an alleged fraudulent transfer of the Debtor's interests in the marital residence brought by the Chapter 7 trustee. (Pl.'s Exs. 570, 573, 576.)

 B. The second factor consisted of a dispute over ownership of the marital residence between the Debtor's mother and Evans.

 C. Finally, the vexatious conduct of both Evans and Debtor further increased the costs of the state court proceeding. Each attempted to avoid disclosure of their finances. The Debtor refused to comply with discovery and intentionally destroyed documents; deliberately failed to produce documents; and gave evasive, misleading and untruthful testimony under oath. This forced Plaintiff to file several motions requesting sanctions and related relief. The state court judge subsequently barred the Debtor from presenting evidence of his expenses as a sanction for his. Evans also held back evidence of her finances.

28. After evaluating finances of the parties, the divorce court concluded that Evans and the Debtor each had the financial ability to pay Plaintiff's attorneys' fees. The judge found that Evans earned approximately $60,000 per year as a television engineer. Her assets included a rental producing condominium; a deferred compensation plan of $142,000; Disney corporation stock; credit union account; retirement benefits in an ABC–NABET Retirement Trust Plan; and an automobile. (Stip. Ex. 19 CO2998.)

29. Since the divorce court barred the Debtor from presenting evidence of his expenses, it did not have a complete picture as to all details of the Debtor's finances. Nonetheless, that court concluded that the Debtor had the ability to pay Plaintiff's attorneys' fees. The judge found that the Debtor earned a substantial income as a practicing physician and had hired and paid for numerous attorneys during the divorce proceedings. (Stip. Ex. 19 CO2999.)

30. Findings of Fact contained in the Conclusions of Law will stand as additional findings of fact.

---

4. The divorce proceeding lasted from August 31, 1990 to July 5, 1995. During this period, on December 27, 1993, the Debtor filed a voluntary Chapter 7 petition. After entry of judgment dissolving the marriage, the Debtor filed bankruptcy four times on June 8, 2001, April 15, 2003, December 26, 2002, and the current bankruptcy filed on July 21, 2003. (Debtor's Findings of Fact ¶¶ 61–64.)

## CONCLUSIONS OF LAW

### Jurisdiction

Jurisdiction lies under 28 U.S.C. § 1334 and under District Court's Internal Operating Procedure 15(a). Determinations of the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409.

### Dischargeability under Section 523(a)(5)(B)

■ Exceptions to discharge are generally construed strictly against a creditor and liberally in favor of the debtor. *Goldberg Secs., Inc. v. Scarlata (In re Scarlata),* 979 F.2d 521, 524 (7th Cir.1992). The objecting creditor has the burden to prove exceptions to discharge by a preponderance of the evidence. *Id.* at 524; *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The policy of protecting and favoring the debtor is tempered, however, when the debt arises from a spousal or child support obligation. *In re Crosswhite,* 148 F.3d 879, 881–882 (7th Cir.1998) (explaining that Section 523(a)(5) expresses Congress' determination to protect former spouses in matters of alimony, maintenance, and support despite the Bankruptcy Code's general policy of providing a debtor with a fresh start). The Section 523(a)(5)(B) exception from discharge is thus construed more liberally than other Section 523 exceptions. *Id.* at 882.

■ It provides:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

This provision sets out three requirements that must be met in order for a debt to be nondischargeable: (1) the underlying debt must be in the nature of alimony, maintenance, or support, in contrast to a debt in the nature of a division of property; (2) the debt must be owed to a former spouse or child; and (3) the debt must be incurred in connection with a separation agreement, property settlement agreement, divorce decree, or other order of a court of record. *Wawak v. Smolenski (In re Smolenski),* 210 B.R. 780, 782 (Bankr.N.D.Ill.1997).

■ Only the first element is in dispute. The second element is satisfied even though the debt is owed to the Plaintiff law firm and not directly owed to Defendant's former spouse. Debt deemed to be in the nature of alimony, maintenance, or support can be owed to a third party, including an attorney. *In re Rios,* 901 F.2d 71, 72 (7th Cir.1990) (per curiam) ("awards of attorneys' fees for services in obtaining support orders have been held non-dischargeable even though the attorney is neither the spouse, a former spouse, or child of the debtor."); *Eden v. Robert A. Chapski, Ltd.,* 405 F.3d 582, 587 (7th Cir.2005) (citing *In re Maddigan,* 312 F.3d 589, 595 (2d Cir.2002)); *Schiller v. Cornish (In re Cornish),* 529 F.2d 1363 (7th Cir. 1976) (per curiam). The rationale is that while attorneys' fees are not directly payable to the spouse, former spouse, or child they may nevertheless constitute part of the underlying alimony, maintenance, or support obligation. *In re Ramirez,* No. 99

B 22274, 2000 WL 356314, at \*2–3, 2000 Bankr.LEXIS 2019, at \*8–10 (Bankr. N.D.Ill. February 9, 2000) (collecting cases). The third element is satisfied since the debt arises from a state court order.

Fed. Rules Civ. Proc. Rule 56(c), 28 U.S.C.A. *Plaintiff has proven by Preponderance of Evidence that the Attorneys' Fee Award is for Service in the Nature of Alimony, Support, or Maintenance*

■ The divorce judge reserved the issue of maintenance for Evans in the divorce decree. The record of hearing as to Cantwell's fees and expenses supports the ruling here that those fees and related expenses comprised an award of at least part of the maintenance thereby reserved. In doing so, the divorce judge certainly weighed competing considerations, including the positive aspects of Evans' finances that were to be compared to the even more favorable earning capacity of Dr. Bearden. The balance struck by her ruling was based primarily on her comparing of the resources of these parties.

■ The determination of whether a debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law rather than state law. *Strickland v. Shannon (In re Strickland)*, 90 F.3d 444, 447 (11th Cir.1996). The analysis is controlled by the substance of the obligation rather than labels imposed by state law. *Maitlen v. Maitlen (In re Maitlen)*, 658 F.2d 466, 468 (7th Cir.1981). Nevertheless, state law may provide guidance in determining whether the obligation should be considered in the nature of sup-

port under § 523(a)(5). *Strickland,* 90 F.3d at 446. The starting point is the basis for creation of the obligation which determines whether it was intended as support and maintenance. *In re Woods*, 561 F.2d 27, 29 (7th Cir.1977). Thus, it must be determined whether or not the divorce court intended that the attorneys' fees would constitute support, maintenance or alimony. *In re Coil*, 680 F.2d 1170, 1172 (7th Cir.1982).

■ A panel opinion of the Seventh Circuit has discussed factors which may often assist in ascertaining the state court's motives. *Woods*, 561 F.2d at 30–31. These factors are said to demonstrate the requisite intent in some situations. However, in the context of disputes over attorneys' fees courts look at other factors. *In re Coil*, 680 F.2d at 1172; *see also Doss, Puchalski, Keenan & Bargiel, Ltd. v. Cockhill (In re Cockhill)*, 72 B.R. 339, 344 (Bankr.N.D.Ill.1987) (concluding that the *Woods* factors provide little guidance in assessing the dischargeability of attorneys' fees contained in a court order). Courts also look at the evidence placed in the record before the divorce court, *Cockhill,* 72 B.R. at 344, the function of the statute that was the basis of the award, *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir.1983), *Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2d Cir.1981), and whether the divorce court considered the finances of the parties. *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 725–726 (10th Cir.1993).[5]

In this case, several factors indicate that the divorce court intended to make the attorneys' fee award against Dr. Bearden "in the nature of alimony, support or main-

---

**5.** If the *Woods* factors are to be weighed, some would weigh in favor of debtor (e.g. the obligation did not expressly end at death, lack of specific characterization designating maintenance or support) and some weigh in favor of Evans (e.g., the court's attempt to balance income by reflecting on Evans' lower income, one child of Evans in need of support, a large difference in income), and other factors are not clearly applicable or inapplicable.

tenance." The first factor is the nature of the legal work performed that was largely directed at protecting the financial interest and income of Evans.

The second factor is financial disparity of Evans and the Debtor. *See, e.g. Robinson v. Robinson (In re Robinson),* 193 B.R. 367 (Bankr.N.D.Ga.1996) ("the presence of financial disparity is a strong indicia of an intent by the divorce court to make a fee award in the nature of alimony, support or maintenance.") In the instant case, the parties did not stand as financial equals at the time of their divorce. Against the Debtors substantial gross income estimated at $100,000 as a practicing physician, Evans earned roughly half that amount, $60,000. (Stip.Ex.19.)

██ The third factor is the function of the state statute upon which the divorce court based its award. The 1996 version of Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act ("Act") provides:

(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by any party, which award shall be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act.

(3) The defense of an appeal of any order or judgment under this Act, in-

cluding the defense of appeals of post-judgment orders.

(4) The maintenance or defense of a petition brought under Section 2–1401 of the Code of Civil Procedure seeking relief from a final order or judgment under this Act.

(5) The costs and legal services of an attorney rendered in preparation of the commencement of the proceeding brought under this Act.

750 Ill. Comp. Stat. 5/508 (1996).[6] The intent of the legislature in enacting Section 508(a) was to ensure that disparate financial resources of the spouses would not result in an undue advantage for the more affluent party to the suit. *In re Erby,* 84 Ill.App.3d 672, 40 Ill.Dec. 378, 406 N.E.2d 79, 81 (1980); *see also In re Marriage of Pahlke,* 154 Ill.App.3d 256, 107 Ill.Dec. 407, 507 N.E.2d 71, 77 (1987) ("the underlying objective of section 508 has been interpreted as diminishing any advantage one spouse may have over the other in the presentation of a case due to a disparity in their respective financial resources."). Section 508(a) expressly requires the divorce court to condition an award of attorneys' fees on the finances of the respective parties.

██ The fourth factor is the analysis used by the divorce court judge. It is true, as Debtor points out, that not all attorneys' fees awarded under § 508(a) are for maintenance or support. *Skryd v. Kijewski (In re Kijewski),* 91 B.R. 48, 50 (Bankr. N.D.Ill.1988) (concluding that attorneys' fees awarded pursuant to § 508(a)'s predecessor is generally in the nature of support or maintenance but this determination may be rebutted); *A.A. Legal Clinic, Ltd. v. Wells (In re Wells),* 8 B.R. 189, 192 (Bankr.N.D.Ill.1981). However, the divorce court, as the statute mandates, close-

**6.** Discussion of § 508(a) relates to the version in effect in 1996 before amendments.

ly scrutinized finances of the parties and their respective ability to pay. The opinion determined that the Debtor was in the best position to assume most of the fees due to Plaintiff.

The divorce court found that Evans had some ability to pay after evaluating her asset disclosure statement, testimony, tax returns, and other documents indicating assets. (*See* Stip. Ex. 19 CO2997–29999.) The Debtor disagrees, contending that no such finding was made, as part of his contention that no real comparative financial analysis was made. (Debtor's Br. at 6.) The Debtor cites the following sentence from the divorce court's analysis: "[O]ne can neither draw the conclusion that [Evans] had the ability to pay the entire amount of fees and costs nor can one draw the conclusion that she has no ability to pay some of it."

This statement reflected the divorce court judge's frustration at the conduct of the litigants, but did not indicate that the division of attorneys' fee award was not based on financial abilities of the parties. As earlier discussed, Defendant withheld production of some evidence, and Evans deliberately withheld evidence of her finances. (The divorce court judge apparently discovered the withholding by Evans during the Petition hearing when her testimony referenced undisclosed assets. See Stip. Ex. 19 CO29997.) But such conduct by the two parties did not prevent the judge from analyzing their respective ability to pay:

> How can the Court make fair decision about the ability of these two individuals to pay when the individuals have not been honest to the Court? These answers will be found by interpreting those facts which are known ... The testimony revealed that Evans owns a condominium ... which is rented for $1,100.00 per month. She did not dis-

close this income on her production affidavit ... She had owned that property during the divorce proceedings but she had not disclosed the information to her then attorneys ... In this current discovery context she omitted other assets which appear in her testimony ... She sets forth expenses [in her affidavit] which exceed her stated income, but not having admitted her full income and corresponding expenses, makes it impossible to use current income as a basis for accurate findings of disposable income.

The divorce court analyzed Evans' ability to pay based on the evidence presented, including her child support from prior marriage, and her rentable condo property and benefits through her employment, salary and pension plan.

The Debtor also deliberately withheld evidence of his income. As a sanction, he was subsequently barred from presenting evidence of his finances. Therefore, the divorce court judge conducted a necessarily abbreviated but nonetheless clear analysis:

> Frank Bearden's ability to contribute [to the attorneys fee award] is to be construed from only a handful of credible facts. He is a practicing physician and he is employed in a number of contexts in that practice. He has lied about those contexts, making it impossible to construe income. He was barred from presenting evidence of his expenses as a sanction for failure to comply with discovery. This was a similar outcome to the last days of the pre-Judgment proceedings and, thus, there has never been an accurate picture of Frank Bearden's financial status. Nothing in what he does say or produces actually proves an income.

For the Debtor to argue now that the divorce court did not consider his finances

after his unsuccessful attempts to conceal them is disingenuous.

The Debtor contends further that the award could not have been for support or maintenance since Evans could support herself. Given the financial disparity between the parties this argument is not well taken. Moreover, this argument was considered and dismissed by the divorce court. *See In re Schneider*, 214 Ill.2d 152, 291 Ill.Dec. 601, 824 N.E.2d 177, 190 (2005) (holding that under Section 508(a) the "party seeking an award of attorney fees must establish her inability to pay and the other spouse's ability to do so.")

In addition, the Debtor asserts that only his litigation conduct was the basis of the fee award against him. It is true that some attorneys' fees were incurred as a result of his contumacious litigation conduct and may not for that reason alone be characterized as support related. However, the fees awarded by the state court against Defendant were not solely related to such conduct. The divorce court analyzed the legal work performed and ability of the parties to pay, and discussed the parties' comparative finances in some detail.

Lastly, the Debtor argues that only those fees directly attributable to an award of support are dischargeable. He points to fees incurred in a dispute concerning the marital property in divorce court and bankruptcy court. According to the Debtor, these fees directly related only to efforts to obtain property for Evans and cannot constitute support. (Debtor's Br. at 20.)

This argument first disregards the fact that taking the multiple tasks of legal work and relative finances into account the state court ordered Evans to pay a large part of the fees, clearly not treating that portion as maintenance or support. That appor-

tion of a substantial part of the fees to her also reflected recognition of her resources.

 This argument also reflects a misapprehension of law. An award of attorneys' fees is nondischargeable support based upon such factors as the balancing of the parties finances. Attorneys' fees incurred in the acquisition of property for a spouse may be deemed support if those fees are meant to relieve the financial burdens of that spouse. See *Joseph v. O'Toole (In re Joseph)*, 16 F.3d 86, 88 (5th Cir.1994) ("An attorney's fee award granted pursuant to a divorce decree does not elude discharge because it tangentially relates to an award of support and maintenance; rather, the attorney's fee award is deemed nondischargeable if the award itself reflects a balancing of the parties' financial needs.").

Furthermore, the work related to the property dispute formed but one of many contributing factors to the attorneys' fee award. (See Findings of Fact ¶¶ 14–15.) It was not the exclusive factor. Rather, the divorce court awarded attorneys' fees based on its consideration of factors such as the parties' financial needs, income earned, and prospective earning ability. The divorce court concluded that Evans did not have the financial resources to pay all of Plaintiff's fees and that the Debtor had the ability to do so.

Finally, while Judge Snow did rely in part on a state law precedent ("Aniemna" case) authorizing awards for litigation conduct unrelated to financial ability, that was only one of the factors she considered and the weight of her reasoning rested on the economic factors earlier discussed.

### CONCLUSION

Plaintiff proved by a preponderance of the evidence that its attorneys' fee award is in the nature of maintenance and support. The debt of $51,131.35 for fees and

expenses owed by the Debtor to Plaintiff and adjudged in the Illinois court martial dissolution proceeding is held to be nondischargeable under 11 U.S.C. § 523(a)(5)(B). Judgment therefore will enter by separate order.